**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Frank W. Catani, Roger L. Kangas, James Nelson, Carl Liend, Larry M. Polcher, Gunder Nelson, Joe Iozzo, Frank Ross, Harry Hagsten, Stanley Bakken, Arnold Lokken, Lawrence Jeffers, Larry Pelkey, Henry Carlson, and Michael Palava,

Civil No. 00-1559 (DWF/RLE)

Plaintiffs,

**MEMORANDUM OPINION AND ORDER**

v.

Mary Chiodi, d/b/a Temps, d/b/a Temps Plus, d/b/a Mary Chiodi Tax & Bookkeeping Service, Temps Plus by Mary, Inc., National Steel Pellet Company, and National Steel Corporation,

Defendants.

---

David A. Arndt, Esq., Matonich & Persson, 2031 Second Avenue East, Hibbing, MN 55746, appeared on behalf of the Plaintiffs.

Gregory P. Wilken, Esq., Seaton, Beck & Peters, P.A., 7301 Ohms Lane, Suite 320, Edina, MN 55439, appeared on behalf of Defendant Mary Chiodi. Michael Iwan, Esq., Dorsey & Whitney L.L.P., Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402, appeared on behalf of Defendant National Steel Company.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned judge on July 19, 2001, pursuant to Defendant Mary Chiodi's Motion for Summary Judgment. In the Complaint, Plaintiffs allege that either Mary Chiodi ("Chiodi"), National Steel Pellet Corporation ("NSPC"), or both failed to pay overtime for hours worked in excess of 40 per week as required by the Fair Labor Standards Act, 29 U.S.C. § 201, and the Minnesota Fair Labor Standards Act, Minn. Stat.

FILED AUG 13 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.____
DEPUTY CLERK____

§ 177.21. In her Memorandum in Support of Motion for Summary Judgment, Chiodi seeks summary judgment on two grounds. First, Chiodi argues that she did not employ the Plaintiffs and merely served as a payroll processor for co-defendant NSPC. Secondly, Chiodi argues that she and NSPC cannot be considered "joint employers" of the Plaintiffs because NSPC maintained complete control over all aspects of their work. This Court grants Chiodi's motion for summary judgment, thereby respectfully dismissing her from the case.

**Background**

Defendant Chiodi is a resident of Chisholm, Minnesota. During the time period relevant to this case, she ran a temporary staffing agency in Hibbing, Minnesota. NSPC, a producer of taconite pellets and a subsidiary of National Steel Corporation, is incorporated in Delaware, and has its principal place of business in Keewatin, Minnesota. The Plaintiffs are former employees of NSPC who either retired or were laid off during the 1980s and early 1990s when NSPC ceased production due to a severe decline in the domestic steel market.

When the demand for domestic steel began to pick up in the mid 1990s, NSPC reopened its plant. In 1994, the company recalled a significant number of its former employees in order to resume operations as quickly as possible. These employees were initially brought back on an "independent contractor" basis. In this arrangement, NSPC paid each employee a flat rate of pay for each hour worked, including those past 40 per week, and did not withhold payroll taxes from its payments.

In 1995, management employees of NSPC became concerned that treatment of the recalled employees as independent contractors created potential liability for the corporation. In order to address that concern, NSPC decided to continue to employ the same individuals, but instead to use a temporary agency to handle various responsibilities related to the recalled employees that previously belonged to NSPC. In October of 1995, Dennis Johnson, Gary

Kleffman, and Tom Peluso, of NSPC, met with Mary Chiodi and Susan Schwartz, a member of her staff, to discuss using Chiodi's agency. Under the arrangement between NSPC and Chiodi, the company would identify individuals it wanted to hire and would send them to Chiodi so that she could process their initial employment applications. The parties did reach an agreement in October 1995, although no formal contract was ever signed. Chiodi accepted this arrangement, as it constituted 70-80% of all work that her small agency was performing.

It was understood that the employees would complete all necessary tax and employment eligibility paperwork at Chiodi's office. Plaintiffs have testified that they were instructed by NSPC to report to Chiodi's offices and complete materials, such as I-9 and tax withholding forms. Each of these meetings in Chiodi's office lasted no more than five or ten minutes. After the initial meetings, Plaintiffs had little, if any, contact with Chiodi. The Plaintiffs testified that, after being told to report to Chiodi's offices, their paychecks were mailed to them at home from Chiodi's offices, together with a blank time sheet. Each pay period, the Plaintiffs would fill out this time sheet and give it to a supervisor at NSPC. The time sheet would then be sent from NSPC to Chiodi.

Chiodi had nothing to do with the training, supervising, or disciplining of employees. NSPC officials claim that they would have considered other employees had Chiodi offered qualified people for the positions. Chiodi had no authority with regards to firing, scheduling, or giving raises to the employees. Chiodi never sent NSPC an employee until after NSPC General Manager Tom Peluso would provide Chiodi with the name of a specific person that NSPC wanted to hire. After the initial meeting with the employees, Chiodi's only steady responsibility was to process the payroll and cut the paychecks. At the end of the year, Chiodi would issue W-2 forms to the employees.

Chiodi was reimbursed directly in advance for all payments made to the Plaintiffs. NSPC remained responsible for payment of the entire amount of the payroll checks, including the employer's portion of Social Security and Medicare withholding. Chiodi did not pay the Plaintiffs out of her own business funds. Instead, she waited until after she had received payment from NSPC before cutting payroll checks for the Plaintiffs. During the first payroll period under this arrangement, Chiodi attempted to pay an overtime premium for hours in excess of 40, but was told by a representative of NSPC not to make such payments. This arrangement lasted until October 1999, at which point NSPC instructed Chiodi to begin paying overtime.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as matter of law. *Enterprise Bank of Missouri*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Chiodi as an Employer Under the FSLA**

Chiodi argues that she did not employ the Plaintiffs and merely served as a payroll processor for NSPC. The FSLA defines "employee" as "any individual employed by the employer." 29 U.S.C. § 203(e)(1). "To employ" under the FLSA, means "to suffer or permit to work." 29 U.S.C. § 203(g). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

The Supreme Court has held that courts should apply these terms in light of the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961). The factors in this economic realities test, although not exhaustive, include: (1) the degree of control over the manner in which the work is performed; (2) the worker's opportunity for profit or loss depending on his managerial skill; (3) the worker's investment in equipment or materials, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree or permanence of the working relationship; and (6) whether the service rendered is an integral part of the employer's business. *Donovan v. DialAmerica*, 757 F.2d 1376, 1382 (3rd Cir. 1985) (quoting *Donovan v. Sureway Cleaners*, 656 F.2d 1368 (9th Cir. 1981)). The economic realities test is not mechanical or formal in its application. Instead, "it is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer." *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998). The economic realities test looks to the specific facts of each case to determine whether an entity is an "employer."

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947). This court will address all factors except those related to profit and loss, special skill, and workers individual investment, because no FSLA case has found any of these factors significant as to whether a temporary employment agency is an "employer."

**a. Degree of Control**

NSPC concedes that Chiodi did not exercise day-to-day supervisory control over Plaintiffs and the other temporary workers at NSPC. NSPC cites *Preston v. Settle Down Enterprises, Inc.*, 90 F. Supp. 2d 1267 (N.D. Ga. 2000) and *Baystate Alternate Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir. 1998), in support of the assertion that none of the FLSA temporary employment cases has found such direct supervisory authority to be a necessary element of employer status.

NSPC argues that the finding that a temporary agency was the employer in *Preston v. Settledown Enterprises* should guide the Court here, noting that the agency in *Preston* had control over the method by which the temporary employees would be paid and because the service maintained the employment records for the worker. The Court finds the current facts to be distinct from those in *Preston*. In *Preston*, it was held that the temporary employment agency was an "employer" under the FSLA even though the agency allegedly had no control over its temporary workers once they reached the job site. In *Preston*, the workers came to the agency on a day-to-day basis hoping to secure work only for that day. The agency selected the workers to send to job sites, indicating a power to hire and fire. After determining a worker was needed for a particular job, the agency would generate a work ticket for that worker. The work ticket stated, "The Service [temporary employment agency] is the employer of personnel furnished to Customer . . . ." The agency told workers when its vans would arrive to take them to job sites.

The agency also set the rate of pay and chose to pay the workers by voucher. The employment agency also provided the temporary employees with equipment to help them complete jobs.

Although Chiodi's agency paid temporary employees and maintained some records for the workers, it had no control over the manner in which the Plaintiffs performed their work. Chiodi lacked all control functions encompassed in *Preston*. First, Chiodi did not hire the NSPC employees on a day-to-day basis. She did not personally select the particular workers to send to the job, indicating no power to hire or fire. She never claimed to be the "employer of personnel to the customer."[1] She provided no transportation or equipment to the workers. These were all functions where NSPC, and not Chiodi, retained complete control over the Plaintiffs' work.

NSPC also asserts that *Baystate Alternate Staffing, Inc., v. Herman* is controlling. In *Baystate*, it was held that the temporary employment agency was an "employer" of temporary workers under the FLSA even though the agency did not exercise any direct supervision of workers at client companies. NSPC maintains that the agency was deemed to be an "employer" because the temporary agency required the workers to complete time sheets, issued paychecks and handled the paperwork, bookkeeping, and payroll functions for its clients. NSPC's interpretation of the case is too narrow and once again disregards numerous distinguishing facts. The facts of *Baystate* also indicate that the employment agency was solely responsible for hiring workers. The agency controlled employee work schedules, retained authority to intervene if

---

[1] NSPC seeks to establish that Chiodi was an employer by evidencing a standard written agreement prepared by Chiodi to NSPC in early 1996 in which Chiodi affirmatively states that workers it places in temporary assignments "are direct employees of temps." This agreement, for whatever reason, was never signed by NSPC and therefore does not show intent on the part of NSPC to be bound by the language of the agreement.

problems arose as to job performance, determined the rate and method of payment, and maintained employment records.

Although Chiodi did maintain payroll records and issued paychecks, her agency did not perform any of the other control aspects highlighted by the Court in *Baystate*. Chiodi was not responsible for hiring employees because all of the workers were referred to Chiodi specifically from NSPC. Indeed, the record indicates that many of these workers were already working for NSPC when NSPC decided to use Chiodi's services. Chiodi had no control over work schedules and had absolutely no authority to intervene when problems arose as to job performance, nor did she ever hear of such problems. Once the workers would come into the office to fill out the applicable paperwork, the only contact between Chiodi and Plaintiffs would be when paychecks and W-2 forms were sent from Chiodi to Plaintiffs. If there were problems concerning their paychecks, the workers would go to NSPC and not to Chiodi. NSPC determined the rate of pay for the workers, and, most significantly, NSPC issued directives to Chiodi not to pay the workers overtime pay as she normally did in the course of business.

Although none of the FLSA temporary employment cases has found direct supervisory authority to be a necessary element of employer status, each court has found additional factors indicating indirect control that simply are not present here. This Court finds no evidence in the record that Chiodi had control over the manner in which the Plaintiffs performed their work, but rather that NSPC retained complete control over the Plaintiffs' work.

**b. Degree of Permanence**

The degree of permanence factor generally looks to whether the individual works simultaneously for two employers, as would be the case with an independent contractor. The record establishes that the Plaintiffs worked exclusively for NSPC, and nobody else, during the

applicable time period. NSPC maintains that while it may be true that the Plaintiffs "worked full-time for NSPC and for no one else during the relevant time period," it is equally true that many of the Plaintiffs worked as little as once or twice per year for a period of a few weeks and that each of the Plaintiffs asked testified they would have considered, and might even have preferred, alternative assignments, had Chiodi presented them with such an option. This argument is unavailing, however, because the relationship between Chiodi and the Plaintiffs is unlike the typical temporary employment agent-client worker relationship.

In the typical temporary employment agency relationship, a client company will solicit the agency for workers. When the work on one job ends, the worker then hopes to be placed into another temporary job by the agency. In the case before the Court, the workers were sent from NSPC to Chiodi. Chiodi had no reason to believe that these workers were to work anywhere but at NSPC. She also had no reason to believe that she should try to place the NSPC workers in another work setting due to the business relationship Chiodi had with NSPC. Furthermore, the Court finds it notable that some of the Plaintiffs first worked for NSPC as regular employees and then as "independent contractors" before the business relationship between Chiodi and NSPC was established.

**c. Service as Part of Business**

Chiodi maintains that the Plaintiffs' services were integral to NSPC's business and not Chiodi's. This argument misses the mark and seems to suggest that no temporary service could ever be the employer of the temporary workers it supplies to customers unless it was supplying temporary help to itself. Generally, temporary agencies are in the business of providing and administratively overseeing temporary employees, and the success of the business depends on temporary workers performing services for that agency's customers. Even though this was not

her typical temporary employment service arrangement, this Court finds that the Plaintiffs' services were indeed integral to Chiodi's business as they provided 70-80% of all business that she conducted during this time frame.

**d. Conclusion**

In determining whether Chiodi was an "employer," viewing the facts in the totality of the circumstances, this Court finds that Chiodi was not an "employer" under the FLSA. Chiodi's relationship with NSPC was different from the working relationships that were present in both *Baystate* and *Preston*, specifically with regards to the degree of control over the manner in which the work was performed. Indeed, Chiodi's arrangement with NSPC was different from that with her other clients. Before a temporary agency is found to be an employer under the FLSA, it must exercise *at least some* degree of control over the individuals alleged to be its employees, and that control is not present here.

**3. Chiodi as a Joint Employer under the FLSA**

Chiodi asserts that she and NSPC cannot be considered "joint employers" of the Plaintiffs because NSPC maintained complete control over all aspects of their work. Whether an entity is a "joint employer" under the FLSA is a question of law. *See Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 29 (1961). The economic realities test has also been applied when two companies share or control a worker's services.[2] In determining whether a "joint

---

[2] To the extent that NSPC argues that this Court's decision should be guided by the analysis used in Title VII "joint employer" cases, the Court's conclusions remain the same. The Court has been directed to two cases, *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925 (D.S.C. 1997) and *Amarnare v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 611 F. Supp. 344 (S.D.N.Y. 1984); however, neither case provides support for the argument that Chiodi should at least be considered a joint employer. In *Williams v. Grimes Aerospace Co.*, the court found that the temporary agency possessed elements of control *in addition to* the maintenance of payroll

(continued...)

employer" relationship exists under the "economic realities" test, courts tend to narrow the inquiry and ask whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). Under the Department of Labor regulations, when the employee performs work that simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist. *See* 29 C.F.R. § 791.2(b). The record clearly establishes that Chiodi and NSPC were not "joint employers" under the FLSA.

**a. Power to Hire or Fire Employees**

Chiodi had no power to hire or fire the NSPC workers. NSPC would either send her the names of the employees it wanted to hire or it would instruct individuals to go to Chiodi's office so that she could process their initial paperwork. Chiodi made no determination as to who would ultimately work at NSPC and who would not. Once the employees began working at NSPC, Chiodi had no authority to end their employment relationship with NSPC.

---

(...continued)
records, such as the power to hire and fire and the role of fielding and responding to complaints regarding employee placement. As this Court has discussed above, neither of these additional elements of control nor any other elements of control have been attributed to Chiodi, other than her maintenance of the payroll. In addition, the holding in *Amarnare v. Merrill Lynch* is also unavailing given that the *Amarnare* court exclusively examined the relationship between the employee and the client brokerage house, without any analysis of the temporary agency.

**b. Supervision of the Employees**

It is uncontradicted that Chiodi had no right to supervise and direct the work schedules or conditions of employment for the employees she sent to NSPC. The work schedules, job assignments, responsibilities, and other conditions of employment were determined by NSPC. NSPC selected who it wanted to hire based on the prior experience of the individual, and then placed the employee in a job most suited to that employee's background and experience. Once at NSPC, the employees received all instruction and direction from NSPC supervisors.

**c. Determining Rate and Method of Pay**

The record indicates that Chiodi did not determine the employees' rates of pay or their wages. With other clients, Chiodi would have temporary workers' files and she would hire appropriate personnel when her clients informed her of their needs. Chiodi would then tell the client what she would pay for a person in that position. If the client agreed, she would get a percentage above that hourly rate. With NSPC, they told her what to pay their employees and Chiodi had no say as to what the rate should be. Moreover, Chiodi's attempt to follow her practice of paying overtime was quashed by NSPC's explicit directive.

**d. Maintenance of Employment Records**

NSPC points to the fact that Chiodi maintained all employment records pertaining to the Plaintiffs, including tax withholding, citizenship, hours worked, paid payroll costs, withheld mandatory taxes, and paid workers' compensation and unemployment insurance. The record indicates that Chiodi did in fact maintain some employment records that were necessary to process the payroll. While this Court notes that this factor is similar to those in cases where "employer" status has been found, the Court finds it is not determinative here in light of the other factors discussed above.

**e. Conclusion**

In determining whether Chiodi was a "joint employer," viewing the facts in the totality of the circumstances, this Court finds that Chiodi was not a "joint employer" under the FLSA. This Court finds that without more than Chiodi's maintenance of employment records and of the NSPC payroll, she cannot be considered a "joint employer" of the Plaintiff employees.

For the reasons stated, **IT IS HEREBY ORDERED**:

1. The Defendant's Motion for Summary Judgment (Doc. 39) is **GRANTED**.

2. The Complaint (Doc. 21), as it relates to Defendant Mary Chiodi, d/b/a Temps Plus, d/b/a/ Mary Chiodi Tax & Bookkeeping Service, and d/b/a Temps Plus by Mary, Inc., is **DISMISSED**; however, the Complaint still stands with respect to Defendants National Steel Pellet Company and National Steel Corporation.

Dated: August 13, 2001

DONOVAN W. FRANK
Judge of United States District Court

**Please forward this announcement to the recipient of this fax.**

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500